IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:13-CV-257-FL

| | |
|---|---|
| DOROTHY MARIA MANSFIELD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| VANDERBILT MORTGAGE AND ) | |
| FINANCE, INC.; and PHILIP A. ) | |
| GLASS, LENNY CICERO, AND ) | |
| MATTHEW HOPTRY, Trustees, ) | |
| ) | |
| Defendants. ) | |

This matter comes before the court on defendant Vanderbilt Mortgage and Finance, Inc.'s ("Vanderbilt") motion to stay litigation pending arbitration and to compel arbitration (DE 4), and plaintiff's motion to remand (DE 12). Both motions are fully briefed and issues raised are ripe for ruling. For the reasons stated below, the court DENIES plaintiff's motion to remand and GRANTS defendant Vanderbilt's motion to stay and compel arbitration.

## BACKGROUND

For purposes of deciding the instant motions, the following facts do not appear to be disputed. On April 16, 2011, plaintiff's home was hit by a tornado, destroying it. On October 14, 2011, in connection with the purchase of a new mobile home, plaintiff – a resident of Bladen County, North Carolina – executed a Manufactured Home and Retail Installment Contract ("the contract") with defendant Vanderbilt Mortgage and Finance, Inc. ("Vanderbilt") – a Tennessee Corporation with its principal place of business in Tennessee – as the lender. Plaintiff also executed

a deed of trust naming defendant Vanderbilt as the beneficiary. The deed of trust took a security interest in the mobile home and on certain land owned by plaintiff. The contract included an arbitration agreement. This arbitration agreement stated that

> Buyer and Seller (sometimes called the "Parties") agree to mandatory, binding arbitration ("Arbitration") of all disputes, claims, controversies, grievances, causes of action, including, but not limited to, common law claims, contract and warranty claims, tort claims, statutory claims, and, where applicable, administrative law claims, and any other matter in question ("Claims") arising from or relating to this Contract, any products/goods, services, insurance, or real property (including improvements to the real property) sold or financed under this Contract, any events leading up to this Contract, the collection and servicing of this Contract, and the interpretation, scope, validity or enforceability of this Contract (with the exception of this agreement to arbitrate, the "Arbitration Agreement"). The interpretation, scope, validity or enforceability of this Arbitration Agreement or any clause or provision herein and the arbitrability of any issue shall be determined by a court of competent jurisdiction.

Compl. Ex. C, at 8. Certain actions, however, were exempted from arbitration:

> Notwithstanding any other provision of this Arbitration Agreement, Buyer agrees that Seller may use judicial process (filing a lawsuit): (a) to enforce the security interest granted in this Contract or any related mortgage or deed of trust. and (b) to seek preliminary relief, such as a restraining order or injunctive relief, in order to preserve the existence; location, condition, or productive use of the Manufactured Home or other Collateral. Buyer and Seller also agree that this Arbitration Agreement does not apply to any Claim where the amount in controversy is less than the jurisdictional limit of the small claims court in the jurisdiction where Buyer resides, provided, however that the Parties agree that any such small claims Claim may only be brought on an individual basis and not as a class action.

Id. at 9. The contract also contained an explicit trial waiver, stating that "Buyer and Seller hereby expressly and irrevocably waive any right to a trial by judge or jury of any Claims covered by this Arbitration Agreement." Id.

At the loan closing where the documents were executed, plaintiff went as instructed to the law offices of Cooper, Davis, and Cooper. She was not given the loan documents in advance to review, and recalls that she was at the office for under thirty minutes. The woman conducting the

2

closing did not explain any of the language of the contract to her, but merely flipped each page and pointed to where plaintiff should sign. No one mentioned the arbitration agreement in the contract, or mentioned arbitration, and the arbitration agreement was largely written in the same type face as the rest of the contract. Plaintiff was not able to negotiate any portion of the contract.

Plaintiff began making monthly payments on the loan in December 2011, but eventually defaulted on the loan. Defendant Vanderbilt executed an Appointment and Substitution of Trustee, and recorded this document on May 28, 2013. Defendant Vanderbilt appointed defendants Philip A. Glass, Lenny Cicero, and Matthew Hoptry (collectively, "the trustee defendants") – all residents of North Carolina – to serve as trustees on plaintiff's deed of trust. Defendant Philip A. Glass filed and served a notice of foreclosure hearing with the Bladen County Clerk of Court. The Assistant Clerk of Superior Court in Bladen County signed an order of foreclosure, which plaintiff is appealing.

Because the jurisdiction of the clerk and court in such foreclosure proceedings is limited to specific findings, plaintiff brought the instant action in Bladen County Superior Court, asserting claims against defendant Vanderbilt for (1) making an unlawful rate spread home loan in violation of N.C. Gen. Stat. § 24-1.1F; (2) breach of the Secure and Fair Enforcement Mortgage Licensing Act ("SAFE Act"), N.C. Gen. Stat. § 53-244.010 *et seq.*; (3) violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDPTA") N.C. Gen. Stat. § 75-1.1 *et seq.*; and (4) breach of the duty of good faith and fair dealing. Plaintiff seeks monetary damages on these claims. Plaintiff also asserted claims against all defendants for declaratory relief that she is entitled to reformation of the loan terms and for injunctive relief prohibiting defendants from proceeding to sell her property, from transferring any interest in plaintiff's security agreement or deed of trust, and from

3

taking any other action adverse to plaintiff's interest in her property.

Defendant Vanderbilt removed this action to this court on December 2, 2013, asserting this court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(3). Defendant Vanderbilt then filed a motion to stay this litigation and compel arbitration (DE 4). Plaintiff opposed this motion, and filed her own motion to remand the action to state court (DE 12), asserting that this court does not have subject matter jurisdiction over the instant action. Defendant Vanderbilt opposed plaintiff's motion.

## COURT'S DISCUSSION

A.  Motion to Remand

The court is obligated to first consider plaintiff's motion to remand. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998) ("The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." (internal quotations and alterations omitted)).

1.  Standard of Review

Federal district courts are courts of limited jurisdiction. "Typically, an action initiated in a state court can be removed to federal court only if it might have been brought in federal court originally." Sonoco Prods. Co. v. Physicians Health Plan, Inc., 338 F.3d 366, 370 (4th Cir. 2003) (internal quotation and alterations omitted). To remove to federal court, the defendant or defendants must file "a notice of removal, containing a short and plain statement of grounds for removal." 28 U.S.C. § 1446(a). The party seeking removal bears the burden of demonstrating that the district court has original jurisdiction. Id. Federal courts "must strictly construe removal jurisdiction. If federal jurisdiction is doubtful, a remand [to state court] is necessary." Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994) (citation omitted).

4

2. Analysis

In this case, plaintiff asserts that this court lacks subject matter jurisdiction over the matter due to a lack of complete diversity among the parties where the trustee defendants are all North Carolina residents. Federal statute authorizes original jurisdiction over cases between diverse citizens where the "amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs . . . ." 28 U.S.C. § 1332(a). "In order to establish diversity jurisdiction, the parties must be completely diverse; none of the plaintiffs may share citizenship with any of the defendants." Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 440 (4th Cir. 1999).

There are, however, certain limited exceptions to the complete diversity requirement. One such exception is for so-called "nominal parties." See Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 460-61 (1980) ("Early in its history, this Court established that the citizens upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy. Thus, a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." (citations and internal quotations omitted)). The issue presented here is whether the trustee defendants are nominal parties.

Plaintiff and defendant Vanderbilt both incorrectly assert that the Fourth Circuit Court of Appeals has not articulated a precise standard for determining whether a party is a nominal party or not, and therefore both parties cite to a variety of different tests which have been used by district courts in this circuit and/or tests used in other circuits. However, the Fourth Circuit recently examined this precise question in Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co., 736 F.3d 255 (4th Cir. 2013). After looking at a variety of tests used in other circuits, such as whether the purportedly nominal defendant or defendants were necessary parties or whether there was a

5

reasonable basis for predicting that they would be held liable, the Fourth Circuit rejected all of them, finding "they have strayed from the fundamental inquiry." Id. at 259-60. The Fourth Circuit determined that "[n]ominal means simply a party having no immediately apparent stake in the litigation either prior or subsequent to the act of removal." Id. "The key inquiry is whether the suit can be resolved without affecting the . . . nominal defendant in any reasonably foreseeable way." Id. The Hartford court made clear that a defendant must "possess a sufficient stake in th[e] proceeding to rise above the status of nominal party," noting that the "nominal party exception helps to preserve the adversity that is central to our system of justice." Id. at 261, 62.

In this case, Hartford's "key inquiry," shows the trustee defendants are nominal parties. They will not be affected in any reasonably foreseeable way by the resolution of this suit. Although plaintiff is seeking to enjoin them from taking any action adverse to plaintiff's interest in the property, they hold title to the land described in the deed of trust "for the sole benefit of the real parties in interest to this action, they being [plaintiff] and [defendant Vanderbilt]." Dempsey v. Transouth Mortg. Corp., 88 F. Supp. 2d 482, 484 (M.D.N.C. 1999) (finding that a substitute trustee was a nominal party to the action). Tellingly, plaintiff's complaint includes no factual allegations against the defendant trustees, but rather pleads only that they are substitute trustees on plaintiff's deed of trust in the foreclosure action and that they are citizens of North Carolina. See Compl. ¶¶ 3-5; see also Dempsey, 88 F. Supp. 2d at 484 (noting that the complaint contained no allegations against the nominal trustee defendant); James v. Vanderbilt Mortg. & Fin., Inc., No. 3:11-CV-498-MOC-DSC, 2012 WL 441170, at *2 n.1 (W.D.N.C. Jan. 23, 2012) (deciding, in an action including a claim for injunctive relief against the substitute trustee, that the substitute trustee was a nominal party where she "does not have . . . any interest in this suit" and "the complete contains

6

no factual allegations against" her.) memorandum and recommendation adopted, No 3:11-CV-498, 2012 WL 440355 (W.D.N.C. Feb. 10, 2012); cf. Payne v. Bank of Am., N.A., No. 3:09-CV-80, 2010 WL 546770, at *6 (W.D. Va. Feb. 11, 2010) (finding a trustee was not a nominal party, but noting as a "crucial difference" from other cases the fact that the complaint therein contained factual allegations against the trustee). Thus, where the court finds the trustee defendants are nominal parties, plaintiff's motion to remand is denied.[1]

B.      Motion to Stay and Compel Arbitration

    1.      Standard of Review

Section 2 of the Federal Arbitration Act ("FAA") provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under section 3 of the FAA, "a court must stay 'any suit or proceeding' pending arbitration of 'any issue referable to arbitration under an agreement in writing for such arbitration.'" Hill v. Peoplesoft USA, Inc., 412 F.3d 540, 543 (4th Cir.2005) (quoting 9 U.S.C. § 3).

The FAA reflects "a liberal federal policy favoring arbitration agreements," and "courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." AT & T Mobility LLC v. Concepcion, 131 S.Ct. 1740, 1745 (2011) (internal

---

[1] In making its determination, this court is aware that a substitute trustee "is a necessary party to any suit to enjoin foreclosure." Crispin v. BAC Home Loans Servicing, LP, No. 5:11-CV-375-FL, 2011 WL 6294319, at *3 n.3 (E.D.N.C. Dec. 15, 2011). The court is also aware that in Hartford, the Fourth Circuit found a party – Hammonds – to be nominal noting that Hammonds's absence from that action "would have no effect on [plaintiff's] ability to be made whole." Hartford 736 F.3d at 261. Although the Hartford court examined the need for a Hammond's inclusion in the action so as to provide the plaintiff with complete relief, this does not undermine the fact that the key inquiry is "whether the suit can be resolved without affecting the . . . nominal defendant in any reasonably foreseeable way." Id. at 260. Indeed, the Hartford court specifically noted that other tests, including whether complete relief could be provided in the absence of the purportedly nominal party, may provide "useful insights, but . . . stray[] from the fundamental inquiry." Id. at 259-60.

7

citations omitted). In determining whether the dispute at issue is one to be resolved through arbitration, the court must "engage in a limited review to ensure that the dispute is arbitrable – i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." Murray v. United Food & Commercial Workers Int'l Union, 289 F.3d 297, 302 (4th Cir. 2002) (citations omitted).

  2. Analysis

The parties in this case dispute both the validity and the scope of the arbitration agreement. Plaintiff argues that the arbitration agreement is unconscionable and therefore unenforceable. Plaintiff also contends that her claims are not arbitrable and so she should be allowed to proceed on those claims in this case. On the other hand, defendant maintains that the arbitration agreement is valid and that plaintiff's claims fall within the scope of that agreement. The court addresses these arguments in turn below.

  a. Unconscionability

Under section 2 of the FAA, a party may seek revocation of an arbitration agreement "upon such grounds as exist at law or in equity for the revocation of any contract," including "generally applicable contract defenses, such as fraud, duress, or unconscionability." AT&T Mobility LLC, 131 S. Ct. at 1746 (quoting 9 U.S.C. § 2) (additional citations omitted). The judicial inquiry is "highly circumscribed," and "the grounds for revocation must relate specifically to the arbitration clause and not just to the contract as a whole." Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 938 (4th Cir. 1999). In this diversity case, the court applies North Carolina law. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Under North Carolina law, "the interpretation of a contract is governed by the law of the place where the contract was made." Tanglewood Land Co., Inc. v.

8

Byrd, 299 N.C. 260, 262 (1980). Here, the contract was made in North Carolina, and thus North Carolina contract law governs.

Under North Carolina law, a contract is unconscionable

only when the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other.

Brenner v. Little Red Sch. House Ltd., 302 N.C. 207, 213 (1981). "[U]nconscionability is an affirmative defense, and the party asserting it has the burden of proof." Tillman v. Commercial Credit Loans, Inc., 362 N.C. 93, 102 (2008). "A party asserting that a contract is unconscionable must prove both procedural and substantive unconscionability." Id. "[P]rocedural unconscionability involves 'bargaining naughtiness' in the form of unfair surprise, lack of meaningful choice, and an inequality of bargaining power." Id. (citations omitted). "Substantive unconscionability, on the other hand, refers to harsh, one-sided, and oppressive contract terms." Id. The procedural/substantive analysis is "more of a sliding scale than a true dichotomy," and a finding of unconscionability "may be appropriate when a contract presents pronounced substantive unfairness and a minimal degree of procedural unfairness, or vice versa." Id. (citation omitted).

In this case, plaintiff contends that the arbitration agreement is both procedurally and substantively unconscionable.[2] The court first considers plaintiff's claims of procedural

---

[2] As an initial matter, the court rejects defendant Vanderbilt's contention that these unconscionability arguments must be decided by the arbitrator because they are directed at the whole contract between the parties and not only the arbitration agreement. Defendant Vanderbilt is correct that "attacks on an entire contract's validity, as distinct from attacks on the arbitration clause alone, are within the arbitrator's ken." Preston v. Ferrer, 552 U.S. 346, 353 (2008). In this case, however, plaintiff's assertions of unconscionability apply specifically to the arbitration agreement. Thus, plaintiff's unconscionability challenge is properly considered by this court. See Hooters, 173 F.3d at 938 (courts may consider grounds for revocation that relate specifically to the arbitration clause of an agreement and not just to the contract as a whole).

9

unconscionability. Plaintiff asserts that the arbitration agreement is procedurally unconscionable because (1) it was a boilerplate, non-negotiable clause, (2) she was at the attorney's office for less than thirty minutes total where a woman merely flipped each page and pointed to where plaintiff should sign, (3) the language in the contract was not explained to her and no one even mentioned the arbitration clause, (4) the arbitration agreement was, for the most part, written in the same type face as the rest of the contract and very little of it was emphasized in any way, and (5) she was an unsophisticated consumer who did not have equal bargaining power with defendant Vanderbilt, a corporation. The North Carolina Supreme Court was presented with virtually the same factors in Tillman, 362 N.C. at 103. There, the court determined that plaintiffs made a sufficient showing to establish procedural unconscionability where:

> [Plaintiffs] were rushed through the loan closings, and the Commercial Credit loan officer indicated where [plaintiffs] were to sign or initial the loan documents. There was no mention of . . . the arbitration clause at the loan closings. In addition, defendants admit that they would have refused to make a loan to plaintiffs rather than negotiate with them over the terms of the arbitration agreement. Finally, the bargaining power between defendants and plaintiffs was unquestionably unequal in that plaintiffs are relatively unsophisticated consumers contracting with corporate defendants who drafted the arbitration clause and included it as boilerplate language in all of their loan agreements.

Id. These factors are indistinguishable from those raised by plaintiff in this case.[3] Accordingly the court is compelled by Tillman to conclude that plaintiff has demonstrated procedural unconscionability.[4]

---

[3] Plaintiff in this case has also raised the fact that the arbitration agreement was written in the same type face as the rest of the contract. The court does not here comment on this factor in any way.

[4] In its reply defendant Vanderbilt asserts that because of the United States Supreme Court decisions in Concepcion and Am. Exp. Co. v. Italian Colors Rest., 133 S. Ct. 2304 (2013), Tillman is no longer good law and "cannot be used . . . as a basis for defeating arbitration." Reply at 4. While portions of Tillman were abrogated by Concepcion and Italian Colors, nothing in these cases would indicate that Tillman's procedural unconscionability analysis is no longer valid.

Defendant Vanderbilt, however, claims that the essence of plaintiff's arguments with regard to procedural unconscionability is simply that the arbitration agreement was a contract of adhesion. Defendant Vanderbilt points out that in <u>Concepcion</u>, the United States Supreme Court noted that "the times in which consumer contracts were anything other than adhesive are long past." <u>Concepcion</u>, 131 S. Ct. at 1750. Defendants are, however, incorrect in asserting that plaintiff argues there was procedural unconscionability based solely upon the fact that the arbitration agreement was a contract of adhesion. Rather, plaintiff also argues that, like the plaintiffs in <u>Tillman</u>, she was rushed through the closing, that there was no mention of the arbitration clause, and that she is an unsophisticated consumer contracting with a corporate entities. Thus, <u>Concepcion</u> does not dictate a contrary finding.

Defendant Vanderbilt also notes the well-established law of North Carolina that persons generally have a duty to read and understand the contracts they sign. <u>See</u> <u>Leonard v. S. Power Co.</u>, 155 N.C. 10 (1911) ("[T]he law will not relieve one who can read and write from liability upon a written contract, upon the ground that he did not understand the purport of the writing, or that he has made an improvident contract, when he could inform himself and has not done so."). Nevertheless, in <u>Tillman</u>, the North Carolina Supreme Court found procedural unconscionability where, among other things, plaintiffs were rushed through the loan closing and told where to sign. Here, as in <u>Tillman</u>, plaintiff was rushed through closing and told where to sign. Accordingly <u>Tillman</u> dictates a finding of procedural unconscionability.[5]

---

[5] Defendant Vanderbilt asserts that recent federal cases regarding arbitration defeat plaintiff's procedural unconscionability arguments. Nearly all of these cases cited deal with other states' law of unconscionability and thus are inapposite here. One of these cases cited does not discuss state law, but analyzes the federal substantive law of arbitration and states that "unequal bargaining power *alone* does not render a contract substantively unconscionable." <u>Cooper v. MRM Inv. Co.</u>, 367 F.3d 493, 504 (6th Cir. 2004) (emphasis added). Of course, plaintiff points to unequal bargaining power as only one factor among others, and points to this factor as it relates to procedural, rather than

11

The court turns now to substantive unconscionability. Plaintiff maintains the arbitration agreement is also substantively unconscionable because she maintains that (1) she has a due process right to have her claims heard in court prior to the deprivation of her property by foreclosure, (2) she cannot effectively vindicate her cause of action in the arbitral forum, and (3) the arbitration agreement is excessively one-sided. The court will consider each of these factors asserted.

Plaintiff asserts that to compel arbitration in this case would violate her due process right to notice and an opportunity to be heard before being deprived of a significant property interest.

Defendant Vanderbilt instituted a foreclosure action pursuant to N.C. Gen. Stat. § 45-21.16. In such proceedings, held before the clerk, the clerk's jurisdiction is limited to six issues:

> If the clerk finds the existence of (i) valid debt of which the party seeking to foreclose is the holder, (ii) default, (iii) right to foreclose under the instrument, (iv) notice to those entitled to such under subsection (b), (v) that the underlying mortgage debt is not a home loan as defined in G.S. 45-101(1b), or if the loan is a home loan under G.S. 45-101(1b), that the pre-foreclosure notice under G.S. 45-102 was provided in all material respects, and that the periods of time established by Article 11 of this Chapter have elapsed, and (vi) that the sale is not barred by G.S. 45-21.12A, then the clerk shall authorize the mortgagee or trustee to proceed under the instrument . . . .

N.C. Gen. Stat. § 45-21.16(d). The decision may be appealed to Superior Court within ten (10) days for *de novo* hearing. N.C. Gen. Stat. § 45-21.16(d1). However, "North Carolina law specifically provides that an action to enjoin a foreclosure proceeding on equitable grounds must be brought in a separate lawsuit." Naef v. Wells Fargo Home Mortg., No. 7:10-CV-163-FL, 2010 WL 5055990, at *2 (E.D.N.C. Dec. 3, 2010) (citing N.C. Gen.Stat. § 45-21.34; In re Foreclosure of Deed of Trust by Goforth Props., Inc., 334 N.C. 369, 374 (1993)). Thus, plaintiff contends that compelling arbitration would deprive her of her constitutional right to be heard by the state in a section 45-21.34

---

substantive, unconscionability. Thus, these cases are of no benefit to defendant Vanderbilt.

12

proceeding. This argument is without merit.

When parties agree to arbitrate, they are very often waiving a constitutional right: the right to a jury trial – and this is not improper. See Samuels, Kramer & Co. v. C.I.R., 930 F.2d 975, 984 (2d Cir. 1991) ("[C]itizens are always free to consent to have their disputes adjudicated by private arbitrators and to waive their personal constitutional rights . . . ."). The arbitration agreement contains a clear waiver of "any right to a trial by judge or jury." Compl. Ex. C, at 9. Thus, compelling arbitration here would not violate plaintiff's due process rights.

The court also notes that North Carolina courts have held that parties properly move to compel arbitration in a section 45-21.34 proceeding. See In re Cornblum, 727 S.E.2d 338, 341 (N.C. App. 2012)("[T]he proper vehicle to bring an arbitration motion is a motion to enjoin a foreclosure sale under N.C. Gen. Stat. § 45-21.34."); In re Carter, 725 S.E.2d 22, 25 (N.C. App. 2012) ("We note that respondents should have raised their right to arbitrate in a motion to enjoin pursuant to N.C. Gen.Stat. § 45-21.34 (2009), which grants the trial court statutory authority and jurisdiction to issue a stay and enforce the arbitration agreement . . . ."). Thus, the fact that this arbitration agreement would compel arbitration of claims that would otherwise be heard before a court pursuant to section 45-21.34 does not contribute in any way to a finding of substantive unconscionability.

Plaintiff also contends that she cannot effectively vindicate her rights in arbitration because her claims are fact-intensive and discovery and evidentiary presentation in arbitration is more limited than in court. This argument has been squarely foreclosed by the Supreme Court. See Concepcion, 131 S.Ct. at 1747 ("An obvious illustration of [a holding that would be preempted by the FAA] would be a case finding unconscionable or unenforceable as against public policy consumer arbitration agreements that fail to provide for judicially monitored discovery."); Gilmer,

13

500 U.S. at 31 ("Gilmer also complains that the discovery allowed in arbitration is more limited than in the federal courts, which he contends will make it difficult to prove discrimination. It is unlikely, however, that age discrimination claims require more extensive discovery than other claims that we have found to be arbitrable, such as RICO and antitrust claims."). Thus, this arbitration agreement is not substantively unconscionable where arbitration provides for a more limited discovery process.

Finally, the court considers plaintiff's assertion that the arbitration clause is excessively one-sided because it exempts from arbitration foreclosure actions, actions for preliminary relief to preserve the property, and claims where the amount in controversy is less than the jurisdictional limit of the small claims court. The court first notes that "[t]he exception for proceedings related to foreclosure is one that is . . . common in arbitration agreements . . . ." Miller v. Equifirst Corp. of WV, CIV A No. 2:00-0335, 2006 WL 2571634, at *11 (S.D.W. Va. Sept. 5, 2006). This is because arbitration "appears to be an impracticable forum for" such proceedings. Lacey v. EMC Mortgage Corp., No. 5:10-CV-00173-RLV, 2011 WL 1337424, at *6 (W.D.N.C. Apr. 7, 2011). With respect to the small claims exception, this applies equally to both parties, allowing both to bring such claims in court. Thus, these provisions do not appear to be so one-sided as to be unconscionable.

Plaintiff points, however, to Tillman, in which the North Carolina Supreme Court found an exemption for foreclosure actions and "actions in which the total damages, costs, and fees do not exceed $15,000" to be one-sided in a way that "contributes to our overall conclusion that [the arbitration agreement] is unconscionable." Id. at 107. As noted above, however, it is plaintiff who bears the burden of demonstrating unconscionability. Id. at 102. The plaintiffs in Tillman had demonstrated that the defendants had used the exemption on small claims in that case to bring over

14

2,000 collection actions and had never once initiated arbitration in North Carolina. Here, by contrast, plaintiff has presented no such evidence. Thus, where plaintiff has failed to present evidence showing this exception applying to both parties inures one-sidedly to defendant Vanderbilt's benefit, the exception does not contribute to a finding of unconscionability.[6]

Based upon the foregoing, the court concludes that while plaintiff has shown procedural unconscionability, the arbitration agreement terms are not so "harsh, one-sided, and oppressive" as to be substantively unconscionable. Tillman, 362 N.C. at 102. Viewing the circumstances and arbitration agreement together, the court cannot find the arbitration agreement to be "so oppressive that no reasonable person would make [it] on the one hand, and no honest and fair person would accept [it] on the other." Brenner, 302 N.C. at 213. Thus, the arbitration agreement is not unconscionable.

    b.  Scope of the Arbitration Agreement

Plaintiff contends that even if the arbitration agreement is enforceable, this action is outside the scope of the arbitration agreement. "Whether a party has agreed to arbitrate an issue is a matter of contract interpretation . . . ." Am. Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 92 (4th Cir. 1996). The FAA, however, "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983). Thus the court "may not

---

[6] The court further notes that the clause held to be one-sided in Tillman only *contributed* to "overall conclusion" that the arbitration agreement was unconscionable. The court spent only two short paragraphs of its decision analyzing this factor, and its finding of substantive unconscionability appeared to rest far more heavily on factors of the prohibitively high cost of the arbitration set forth in the agreement, and on a prohibition on joinder of claims and class action litigation. Id. at 104-08. The prohibitive cost factor is not present in this case, and the Supreme Court of the United States has held in Concepcion and Italian Colors that class action waivers in arbitration agreements are not proper grounds upon which to base a finding of unconscionability. Thus, even were the court to find the exemptions were "designed . . . more for the benefit of [defendant Vanderbilt] than for plaintiff[]", it would not find them sufficient by themselves, to support a finding of unconscionability. Tillman, 362 N.C. at 107.

15

deny a party's request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Am. Recovery Corp., 96 F.3d at 92.

As noted above, the arbitration agreement provides that the parties will arbitrate

> all disputes, claims, controversies, grievances, causes of action, including, but not limited to, common law claims, contract and warranty claims, tort claims, statutory claims, and, where applicable, administrative law claims, and any other matter in question ("Claims") arising from or relating to this Contract . . . [or] the collection and servicing of this Contract . . . .

Compl. Ex. C, at 8. Plaintiff's claims all arise from the contract or the collection and servicing thereof – a fact plaintiff does not deny. Accordingly, where these claims arise under the contract, it is clear they are within the scope of the arbitration agreement.

Plaintiff attempts to resist this conclusion by arguing that this action is not a separate proceeding from defendant Vanderbilt's foreclosure action, but a defense thereto where she is only able to raise equitable defenses to defendant Vanderbilt's foreclosure in a separate action. As discussed above, however, this action is a separate action from a foreclosure proceeding. Accordingly, the claims she brings are properly viewed as claims brought by a plaintiff, rather than mere defenses asserted. Moreover, while plaintiff does seek declaratory relief modifying the terms of the contract, and injunctive relief prohibiting foreclosure, she also seeks monetary relief in her claims for violations of N.C. Gen. Stat. § 24-1.1F, the UDTPA, the SAFE Act, and her claim for breach of the duty of good faith and fair dealing.

Plaintiff also contends that North Carolina courts have exclusive jurisdiction over actions affecting title to land in this state, and therefore this matter is outside the scope of the arbitration agreement. As defendants note, however, such state laws are superseded by the FAA. Preston v.

16

Ferrer, 552 U.S. 346, 349-50 (2008). Moreover, as discussed above, North Carolina courts have stated that motions to compel arbitration may properly be brought in section 45-21.34 proceedings. See In re Cornblum, 727 S.E.2d 338, 341 (N.C. App. 2012); In re Carter, 725 S.E.2d 22, 25 (N.C. App. 2012)

Based upon the foregoing, where the parties have a valid arbitration agreement covering the claims in this case, defendant Vanderbilt's motion to stay and compel arbitration is granted.

## CONCLUSION

For reasons stated above, plaintiff's motion to remand (DE 12) is DENIED. Defendant Vanderbilt's motion to stay and compel arbitration (DE 4) is GRANTED. Plaintiff is ORDERED to submit her claims to binding arbitration in the manner provided for in the arbitration agreement. This action shall be STAYED pending of arbitration pursuant to 9 U.S.C. §§ 3, 4. The Clerk is DIRECTED to remove this case from the court's active docket, with leave for any party to move to reinstate the same on the active docket at the conclusion of arbitration proceedings.

SO ORDERED, this the 16th day of June, 2014.

LOUISE W. FLANAGAN
United States District Court Judge